**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

**Southern District of Texas**

(State)

Case number *(if known)*: _____   Chapter __11__

☐ Check if this is an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

04/20

If more space is needed, attach a separate sheet to this form.  On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

| | | | |
|---|---|---|---|
| 1. | **Debtor's Name** | **Atwood Oceanics Pacific Limited** | |

| | | | |
|---|---|---|---|
| 2. | **All other names debtor used in the last 8 years** | **N/A** | |
| | Include any assumed names, trade names, and *doing business as* names | | |

| | | |
|---|---|---|
| 3. | **Debtor's federal Employer Identification Number** (EIN) | **98-0662881** |

**4.  Debtor's address**

| **Principal place of business** | **Mailing address, if different from principal place of business** |
|---|---|
| **89 Nexus Way, Camana Bay** | Menara Binjai, No. 2 Suite 10-02, Level 10 |
| Number    Street | Number        Street |
| **PO Box 31106** | |
| | P.O. Box |
| **Grand Cayman,   Cayman Islands  KY1-1205** | Jalan Binjai, Kuala Lumpur, Malaysia 50450 |
| City                     State      Zip Code | City                State     Zip Code |
| | **Location of principal assets, if different from principal place of business** |
| County | Number        Street |
| | City                State     Zip Code |

| | | |
|---|---|---|
| 5. | **Debtor's website** (URL) | **www.valaris.com** |

| | | |
|---|---|---|
| 6. | **Type of debtor** | ☐ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP)) |
| | | ☐ Partnership (excluding LLP) |
| | | ☒ Other. Specify:        Exempted Company |

Debtor   **Atwood Oceanics Pacific Limited**                          Case number *(if known)* _____
_____Name_____

| | |
|---|---|
| **7.   Describe debtor's business** | **A.** *Check One:* |
| | ☐ Health Care Business (as defined in 11 U.S.C. § 101(27A)) |
| | ☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B)) |
| | ☐ Railroad (as defined in 11 U.S.C. § 101(44)) |
| | ☐ Stockbroker (as defined in 11 U.S.C. § 101(53A)) |
| | ☐ Commodity Broker (as defined in 11 U.S.C. § 101(6)) |
| | ☐ Clearing Bank (as defined in 11 U.S.C. § 781(3)) |
| | ☒ None of the above |

**B.** *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

**C.**   NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .
**2111 - Oil and Gas Extraction**

| | |
|---|---|
| **8.   Under which chapter of the Bankruptcy Code is the debtor filing?** | *Check One:* |
| | ☐ Chapter 7 |
| | ☐ Chapter 9 |
| A debtor who is a "small business debtor" must check the first sub-box.  A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box. | ☒ Chapter 11.  *Check all that apply:* |
| | ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,725,625.  If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B). |
| | ☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1). Its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000 **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B). |
| | ☐ A plan is being filed with this petition. |
| | ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |
| | ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934.  File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11 (Official Form 201A)* with this form. |
| | ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2. |
| | ☐ Chapter 12 |

| | | | | | | |
|---|---|---|---|---|---|---|
| **9.   Were prior bankruptcy cases filed by or against the debtor within the last 8 years?** | ☒ No | | | | | |
| | ☐ Yes. | District _____ | When _____ MM/DD/YYYY | Case number _____ | | |
| If more than 2 cases, attach a separate list. | | District _____ | When _____ MM/DD/YYYY | Case number _____ | | |

Debtor    **Atwood Oceanics Pacific Limited**            Case number *(if known)*
      Name

---

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

    List all cases. If more than 1, attach a separate list.

☐ No
☒ Yes.

    Debtor   **See Rider 1**          Relationship   **Affiliate**

    District   **Southern District of Texas**        When   **08/19/2020**
                                            MM / DD / YYYY

    Case number, if known

**11. Why is the case filed in *this* district?**

*Check all that apply:*

☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☒ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No[1]
☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

    **Why does the property need immediate attention?** *(Check all that apply.)*

    ☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

        What is the hazard?

    ☐ It needs to be physically secured or protected from the weather.

    ☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

    ☐ Other

    **Where is the property?**

        Number    Street

        City          State   Zip Code

    **Is the property insured?**

    ☐ No

    ☐ Yes.  Insurance agency

             Contact name

             Phone

---

**Statistical and administrative information**

**13. Debtor's estimation of available funds (on a consolidated basis)**

*Check one:*

☒ Funds will be available for distribution to unsecured creditors.
☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors (on a consolidated basis)**

☐ 1-49
☐ 50-99
☐ 100-199
☐ 200-999

☐ 1,000-5,000
☐ 5,001-10,000
☐ 10,001-25,000

☒ 25,001-50,000
☐ 50,001-100,000
☐ More than 100,000

---

[1]   The Debtors provide offshore drilling services, including the operation of a rig fleet. The Debtors note that the term "imminent and identifiable hazard" is not defined in this form; however, the Debtors do not believe they own or possess any real or personal property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety.

Debtor  __Atwood Oceanics Pacific Limited_____      Case number *(if known)* _____
         Name

| 15. Estimated assets (on a consolidated basis) | ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| --- | --- | --- | --- |
| | ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| | ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☒ $10,000,000,001-$50 billion |
| | ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

| 16. Estimated liabilities (on a consolidated basis) | ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| --- | --- | --- | --- |
| | ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☒ $1,000,000,001-$10 billion |
| | ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| | ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

## Request for Relief, Declaration, and Signatures

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

| 17. Declaration and signature of authorized representative of debtor | The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition. |
| --- | --- |
| | I have been authorized to file this petition on behalf of the debtor. |
| | I have examined the information in this petition and have a reasonable belief that the information is true and correct. |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   __08/19/2020__
              MM/ DD / YYYY

✗   __/s/ Jonathan Baksht_____          __Jonathan Baksht_____
    Signature of authorized representative of debtor       Printed name

Title   __Executive Vice President and__
        __Chief Financial Officer_____

| 18. Signature of attorney | ✗   __/s/ Matthew D. Cavenaugh_____   Date   __08/19/2020__ |
| --- | --- |
| | Signature of attorney for debtor                    MM/DD/YYYY |

__Matthew D. Cavenaugh_____

__Jackson Walker L.L.P._____
Firm name

__1401 McKinney Street, Suite 1900_____
Number                    Street

__Houston_____   __Texas___   __77010___
City                                      State        ZIP Code

__(713) 752-4200_____   __mcavenaugh@jw.com____
Contact phone                           Email address

__24062656_____   __Texas___
Bar number                     State

<table>
<tr><td colspan="2" style="background-color:black; color:white"><strong>Fill in this information to identify the case:</strong></td></tr>
<tr><td colspan="2">United States Bankruptcy Court for the:<br> <strong>Southern District of Texas</strong><br>(State) </td></tr>
<tr><td>Case number <em>(if known)</em>: _____</td><td>Chapter    <strong>11</strong></td></tr>
</table>

☐ Check if this is an
amended filing

### <u>Rider 1</u>
### <u>Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor</u>

On the date hereof, each of the entities listed below (collectively, the "<u>Debtors</u>") filed a petition in the United States Bankruptcy Court for the Southern District of Texas for relief under chapter 11 of title 11 of the United States Code. The Debtors have moved for joint administration of these cases under the case number assigned to the chapter 11 case of Valaris plc

| | |
|---|---|
| Valaris plc | ENSCO Offshore Company |
| Alpha Achiever Company | ENSCO Offshore International Company |
| Alpha Admiral Company | ENSCO Offshore International Holdings Limited |
| Alpha Archer Company | ENSCO Offshore International Inc. |
| Alpha Offshore Drilling Services Company | ENSCO Offshore U.K. Limited |
| Alpha Orca Company | ENSCO Overseas Limited |
| Atlantic Maritime Services LLC | Ensco Transcontinental II LP |
| Atwood Australian Waters Drilling Pty Ltd | Ensco Transnational I Ltd. |
| Atwood Deep Seas, Ltd. | Ensco UK Drilling Limited |
| Atwood Oceanics Australia Pty. Limited | ENSCO United Incorporated |
| Atwood Oceanics LLC | ENSCO Universal Limited |
| Atwood Oceanics Pacific Limited | Ensco Vistas Limited |
| Atwood Offshore Drilling Limited | ENSCO Worldwide GmbH |
| Atwood Offshore Worldwide Limited | Great White Shark Limited |
| Ensco (Thailand) Limited | Green Turtle Limited |
| ENSCO Asia Pacific Pte. Limited | Offshore Drilling Services LLC |
| ENSCO Associates Company | Pride Foramer S.A.S. |
| ENSCO Australia Pty. Limited | Pride Forasol S.A.S. |
| ENSCO Capital Limited | Pride Global II Ltd. |
| ENSCO Corporate Resources LLC | Pride International LLC |
| ENSCO Development Limited | Pride International Management Company LP |
| Ensco do Brasil Petróleo e Gás Ltda. | Ralph Coffman Limited |
| Ensco Drilling I Ltd. | Ralph Coffman Luxembourg S.à r.l. |
| ENSCO Drilling Mexico LLC | RCI International, Inc. |
| Ensco Endeavors Limited | RD International Services Pte. Ltd. |
| ENSCO Global GmbH | RDC Arabia Drilling, Inc. |
| ENSCO Global Investments LP | RDC Holdings Luxembourg S.à r.l. |
| Ensco Global IV Ltd. | RoCal Cayman Limited |
| ENSCO Global Resources Limited | Rowan Companies Limited |
| ENSCO Holding Company | Rowan Companies, LLC |
| Ensco Holdings I Ltd. | Rowan Drilling (Trinidad) Limited |
| ENSCO Holland B.V. | Rowan Drilling (U.K.) Limited |
| ENSCO Incorporated | Rowan Drilling, S. de R.L. de C.V. |
| Ensco Intercontinental GmbH | Rowan International Rig Holdings S.à r.l. |
| ENSCO International Incorporated | Rowan Marine Services, LLC |
| Ensco International Ltd. | Rowan N-Class (Gibraltar) Limited |
| ENSCO Investments LLC | Rowan No. 1 Limited |
| Ensco Jersey Finance Limited | Rowan Norway Limited |
| ENSCO Limited | Rowan Offshore (Gibraltar) Limited |
| Ensco Management Corp. | Rowan Offshore Luxembourg S.à r.l. |
| ENSCO Maritime Limited | Rowan Rex Limited |
| Ensco Mexico Services, S. de R.L. de C.V. | Rowan Rigs S.à r.l. |
| Ensco Ocean 2 Company | Rowan Services LLC |
| ENSCO Oceanics Company LLC | Rowan, S. de R.L. de C.V. |
| ENSCO Oceanics International Company | Rowandrill, LLC |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ATWOOD OCEANICS PACIFIC LIMITED, | ) | Case No. 20-_____ (___) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**LIST OF EQUITY SECURITY HOLDERS[2]**

| Debtor | Equity Holders | Address of Equity Holder | Percentage of Equity Held |
|---|---|---|---|
| Atwood Oceanics Pacific Limited | Atwood Offshore Worldwide Limited | 89 Nexus Way, Camana Bay, PO Box 31106, Grand Cayman, KY1-1205 Cayman Islands | 100% |

---

[2]  This list serves as the disclosure required to be made by the debtor pursuant to Rule 1007 of the Federal Rules of Bankruptcy Procedure.  All equity positions listed indicate the record holder of such equity as of the date of commencement of the chapter 11 case.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| ATWOOD OCEANICS PACIFIC LIMITED, | ) |
| | ) Case No. 20-_____ (___) |
| Debtor. | ) |
| | ) |

<u>**CORPORATE OWNERSHIP STATEMENT**</u>

       Pursuant to Rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the following are corporations, other than a government unit, that directly or indirectly own 10% or more of any class of the debtor's equity interest:

| Shareholder | Approximate Percentage of Shares Held |
|---|---|
| Atwood Offshore Worldwide Limited | 100% |

Fill in this information to identify the case:

Debtor name:  Valaris plc, et al.,

United States Bankruptcy Court for the: Southern District of Texas

Case number (If known): _____

☐ Check if this is an amended filing

## Official Form 204

## Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders

12/15

A list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code* | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | Deutsche Bank Attn: Matthew Yao Corporate Trust Department 100 Plaza One Jersey City, NJ  07311-3901 | Matthew Yao EMAIL - PHONE - (201) 593-4732 FAX - | 5.750% Senior Notes Due 2044 | | | | $     1,000,500,000 |
| 2 | Deutsche Bank Attn: Matthew Yao Corporate Trust Department 100 Plaza One Jersey City, NJ  07311-3901 | Matthew Yao EMAIL - PHONE - (201) 593-4732 FAX - | 7.750% Senior Notes Due 2026 | | | | $     1,000,000,000 |
| 3 | Deutsche Bank Attn: Matthew Yao Corporate Trust Department 100 Plaza One Jersey City, NJ  07311-3901 | Matthew Yao EMAIL - PHONE - (201) 593-4732 FAX - | 3.000% Exchangeable Senior Notes Due 2024 | | | | $       849,500,000 |
| 4 | US Bank Attn: Corporate Trust Services 5555 San Felipe Suite 1150 Houston, TX  77056 | Corporate Trust Services EMAIL - PHONE - (713) 235-9208 FAX - (713) 235-9213 | 4.875% Senior Notes Due 2022 | | | | $       620,824,000 |
| 5 | Citi - Global Energy Attn: Derrick Lenz Director - Corporate & Investment Bank 811 Main Street Suite 4000 Houston, TX  77002 | Derrick Lenz EMAIL - derrick.lenz@citi.com PHONE - (713) 821-4832 FAX - (281) 274-9369 | Revolving Credit Facility | | | | $       581,000,000 |
| 6 | US Bank Attn: Corporate Trust Services 5555 San Felipe Suite 1150 Houston, TX  77056 | Corporate Trust Services EMAIL - PHONE - (713) 235-9208 FAX - (713) 235-9213 | 5.400% Senior Notes Due 2042 | | | | $       400,000,000 |
| 7 | US Bank Attn: Corporate Trust Services 5555 San Felipe Suite 1150 Houston, TX  77056 | Corporate Trust Services EMAIL - PHONE - (713) 235-9208 FAX - (713) 235-9213 | 5.850% Senior Notes Due 2044 | | | | $       400,000,000 |
| 8 | US Bank Attn: Corporate Trust Services 5555 San Felipe Suite 1150 Houston, TX  77056 | Corporate Trust Services EMAIL - PHONE - (713) 235-9208 FAX - (713) 235-9213 | 7.375% Senior Notes Due 2025 | | | | $       360,813,000 |
| 9 | Daewoo Shipbuilding & Marine Engineering Attn: Sung Geun Lee CEO & President 3370, Geojedae-Ro Geoje-Si Gyeongsangnam-Do,  656-714 Republic Of Korea (South Korea) | Sung Geun Lee EMAIL - sunggeunlee@dsme.co.kr PHONE - 02.2129.0114 FAX - | Contract Claim | Contingent | | | $       358,800,000 |
| 10 | Deutsche Bank Attn: Matthew Yao Corporate Trust Department 100 Plaza One Jersey City, NJ  07311-3901 | Matthew Yao EMAIL - PHONE - (201) 593-4732 FAX - | 5.200% Senior Notes Due 2025 | | | | $       333,742,000 |
| 11 | US Bank Attn: Corporate Trust Services 5555 San Felipe Suite 1150 Houston, TX  77056 | Corporate Trust Services EMAIL - PHONE - (713) 235-9208 FAX - (713) 235-9213 | 4.750% Senior Notes Due 2024 | | | | $       318,571,000 |
| 12 | Deutsche Bank Attn: Matthew Yao Corporate Trust Department 100 Plaza One Jersey City, NJ  07311-3901 | Matthew Yao EMAIL - PHONE - (201) 593-4732 FAX - | 4.500% Senior Notes Due 2024 | | | | $       303,358,000 |

Debtor   _Valaris plc, et al._                                                                                                   Case number (if known)_____

| | Name of creditor and complete mailing address, including zip code* | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 13 | The Bank of New York Mellon Trust Company, NA<br>Attn: Sherma Thomas<br>Client Service Manager<br>Corporate Trust Office<br>101 Barclay Street, 4W<br>New York, NY  10286 | Sherma Thomas<br>EMAIL - sherma.thomas@bnymellon.com<br>PHONE -<br>FAX - | 7.875% Senior Notes Due 2040 | | | | $    300,000,000 |
| 14 | Deutsche Bank<br>Attn: Matthew Yao<br>Corporate Trust Department<br>100 Plaza One<br>Jersey City, NJ  07311-3901 | Matthew Yao<br>EMAIL -<br>PHONE - (201) 593-4732<br>FAX - | 8.000% Senior Notes Due 2024 | | | | $    292,329,000 |
| 15 | The Bank of New York Mellon Trust Company, NA<br>Attn: Sherma Thomas<br>Client Service Manager<br>Corporate Trust Office<br>101 Barclay Street, 4W<br>New York, NY  10286 | Sherma Thomas<br>EMAIL - sherma.thomas@bnymellon.com<br>PHONE -<br>FAX - | 6.875% Senior Notes Due 2020 | | | | $    122,890,000 |
| 16 | Deutsche Bank<br>Attn: Erika Wershoven<br>Account Manager<br>Global Securities Services - Issuer Services<br>60 Wall Street<br>MSYNYC 60-2710<br>New York, NY  10005 | Erika Wershoven<br>EMAIL - erika.wershoven@db.com<br>PHONE - (317) 288-4244<br>FAX - | 7.200% Debentures Due 2027 | | | | $    112,122,000 |
| 17 | Deutsche Bank<br>Attn: Matthew Yao<br>Corporate Trust Department<br>100 Plaza One<br>Jersey City, NJ  07311-3901 | Matthew Yao<br>EMAIL -<br>PHONE - (201) 593-4732<br>FAX - | 4.700% Senior Notes Due 2021 | | | | $    100,673,000 |
| 18 | Keppel Letourneau<br>Attn: Debora Marcos<br>Operations Manager<br>5177 Richmond Ave. Suite 950<br>Houston, TX  77056 | Debora Marcos<br>EMAIL - debora.marcos@keppelletourneau.com<br>PHONE - (832) 459-8527<br>FAX - | Trade Payable | | | | $    1,311,492 |
| 19 | Sodexo<br>Attn: Denis Machuel<br>CEO<br>255 Quai de la Bataille de Stalingrad<br>Issy-les-Moulineaux,  92130<br>France | Denis Machuel<br>EMAIL - denis.machuel@sodexo.com<br>PHONE - +33 1 30 85 75 00<br>FAX - | Trade Payable | | | | $    981,377 |
| 20 | Storebrand Livforsikring<br>Attn: Karin Greve-Isdahl<br>Executive Vice President, Communications and Investor Relations<br>Professor Kohts vei 9<br>Lysaker,  1366 | Karin Greve-Isdahl<br>EMAIL - karin.greve-isdahl@storebrand.no<br>PHONE - +47 411 92 329<br>FAX - | Trade Payable | | | | $    624,119 |
| 21 | Artemis Energy<br>Attn: Gerard Cooper<br>Chief Financial Officer<br>35 Hafzah Ave<br>Sumouh Gardens<br>Vistabelle,<br>Trinidad & Tobago | Gerard Cooper<br>EMAIL - info@artemis-energy.com<br>PHONE - +2349037081333<br>FAX - | Trade Payable | | | | $    572,296 |
| 22 | Gulf Engineering Services<br>Attn: Vishnu Gopeesingh<br>Director of Operations<br>2 1/4 MM South Trunk Highway<br>La Romain<br>San Fernando,<br>Trinidad & Tobago | Vishnu Gopeesingh<br>EMAIL - vgopeesingh@gulfengtt.com<br>PHONE - (868) 652-8447<br>FAX - | Trade Payable | | | | $    504,424 |
| 23 | Chet Morrison Contractors Inc<br>Attn: Chet Morrison<br>Founder and CEO<br>9 Bayou Dularge Road<br>Houma, LA  70363 | Chet Morrison<br>EMAIL - cmorrison@chetm.com<br>PHONE - (985) 868-1950<br>FAX - | Trade Payable | | | | $    415,990 |
| 24 | Schlumberger<br>Attn: Saul R. Laureles<br>Deputy General Counsel<br>5599 San Felipe<br>Houston, TX  77056 | Saul R. Laureles<br>EMAIL - slaureles@slb.com<br>PHONE - (713) 513-2000<br>FAX - | Trade Payable | | | | $    331,751 |
| 25 | Oil States Industries, Inc<br>Attn: Mike Hogan<br>Vice President<br>7701 S. Cooper Street<br>Arlington, TX  76001 | Mike Hogan<br>EMAIL - mike.hogan@oilstates.com<br>PHONE - (512) 556-5471<br>FAX - | Trade Payable | | | | $    330,731 |

| | Name of creditor and complete mailing address, including zip code* | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 26 | AFP<br>Attn: Ingvild Dingstad<br>CEO<br>Vollsveien 2A<br>Lysaker,  1366<br>Norway | Ingvild Dingstad<br>EMAIL - ingvild@afpslv.no<br>PHONE - 22 98 98 00<br>FAX - | Trade Payable | | | | $            280,406 |
| 27 | RPS Energy<br>Attn: John Chubb<br>CEO - UK & Ireland<br>20 Western Avenue<br>Milton Park<br>Abingdon,  OX14 4SH<br>United Kingdom | John Chubb<br>EMAIL - john.chubb@grontmij.dk<br>PHONE - +44 (0) 1235 863 206<br>FAX - | Trade Payable | | | | $            266,944 |
| 28 | Triangle Facility Management<br>Attn: Nader Fawzy<br>Chief Financial Officer<br>48 Thawra St.<br>Dokki<br>Giza,<br>Egypt | Nader Fawzy<br>EMAIL - nader_fawzy@triangle.com.eg<br>PHONE - +20 2 33360353-9<br>FAX - | Trade Payable | | | | $            259,276 |
| 29 | Gulf Agency Company<br>Attn: Mikael Leijonberg<br>Chief Financial Officer<br>Jebel Ali Free Zone (Gate 4)<br>GAC Dubai Building<br>Jebel Ali<br>Dubai,<br>United Arab Emirates | Mikael Leijonberg<br>EMAIL - mikael.leijonberg@gac.com<br>PHONE - +971 4 881 8090<br>FAX - +971 4 881 8687 | Trade Payable | | | | $            253,675 |
| 30 | Pension Benefit Guaranty Corporation<br>Attn: Patricia Kelly<br>1200 K Street, NW<br>Washington, DC  20005 | Patricia Kelly<br>EMAIL - pbgcpublicaffairs@pbgc.gov<br>PHONE - (202) 326-4110<br>FAX - (202) 229-4047 | Pension | Contingent, Unliquidated, Disputed | | | Undetermined |

* SERP recipients are excluded due to concerns involving PII

Fill in this information to identify the case and this filing:

Debtor Name      Atwood Oceanics Pacific Limited

United States Bankruptcy Court for the:      **Southern District of Texas**

(State)

Case number (If known):

## Official Form 202
## Declaration Under Penalty of Perjury for Non-Individual Debtors      12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐   *Schedule A/B: Assets-Real and Personal Property (Official Form 206A/B)*

☐   *Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)*

☐   *Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)*

☐   *Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)*

☐   *Schedule H: Codebtors (Official Form 206H)*

☐   *Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)*

☐   Amended Schedule

☒   *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders (Official Form 204)*

☒   Other document that requires a declaration_____      **List of Equity Security Holders and Corporate Ownership Statement**_____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on

| | |
|---|---|
| **08/19/2020** | ☒ */s/ Jonathan Baksht* |
| MM/ DD/YYYY | Signature of individual signing on behalf of debtor |
| | **Jonathan Baksht** |
| | Printed name |
| | **Executive Vice President and Chief Financial Officer** |
| | Position or relationship to debtor |

**Official Form 202**                    **Declaration Under Penalty of Perjury for Non-Individual Debtors**

**UNANIMOUS WRITTEN CONSENT OF THE BOARD OF DIRECTORS OF**
**ATWOOD OCEANICS PACIFIC LIMITED**

August 18, 2020

The undersigned, being all of the members of the respective board of managers, board of directors, the sole member, general partner, or managing member, as applicable (each, a "Governing Body"), of Atwood Oceanics Pacific Limited (the "Company") in such capacity, do hereby waive any applicable requirements of notice and meeting in accordance with applicable law and pursuant to such Company's governing documents and do hereby approve, consent to, adopt, and ratify the following recitals and resolutions and the actions therein authorized:

**WHEREAS**, the Governing Body has considered (i) the entry into that certain restructuring support agreement (the "**Restructuring Support Agreement**") and/or any other any agreements, certificates, instruments, powers of attorney, letters, forms of transfer, deeds, and other documents in furtherance of a restructuring transaction or series of transactions by which Valaris plc, an English public limited company ("**Valaris**") and certain of its subsidiaries (including the Company) would restructure their debt obligations and other liabilities, (ii) the entry into that certain backstop commitment agreement (the "**Backstop Agreement**") by which certain of the Valaris' unsecured noteholders (the "**Commitment Parties**") have agreed to backstop a new-money debt raise in connection with the Valaris' restructuring,  and (ii) the filing of a voluntary petition for relief under the provisions of chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. for the Company, and if applicable, local proceedings for the Company, pursuant to applicable law and in accordance with the requirements of the Company's governing documents and applicable law (collectively, the "**Restructuring Matters**"); and

**WHEREAS**, if timely agreement is not reached on the terms of the Restructuring Support Agreement and/or the Backstop Agreement it may, nonetheless, be in the best interests of the Company, its interest holders, its subsidiaries (if any), its creditors, and other stakeholders and parties in interest to proceed with the Bankruptcy Petitions (as defined below) and any foreign ancillary proceedings,  as applicable.

**WHEREAS**, the Governing Body has reviewed and considered certain materials presented by the management of Valaris ("**Management**") and Valaris' financial and legal advisors (the "**Advisors**"), including, but not limited to, the subsidiary briefing memoranda dated June 25, 2020, July 30, 2020, and August 14, 2020, materials regarding the liabilities and obligations of the Company, its liquidity, strategic alternatives available to it, and the effect of the foregoing on the Company's business, and has had adequate opportunity to consult such persons regarding the materials presented, obtain additional information, and to fully consider each of the strategic alternatives available to the Company.

**WHEREAS**, the Restructuring Matters are intended to implement a plan of reorganization and to allow Valaris and its group (including the Company) to emerge with an improved financial position and a more sustainable capital structure for the benefit of, and in order to preserve value for, the Company's stakeholders.

**WHEREAS**, to the extent required by the Company's governing documents and applicable law, the members of the Governing Body confirmed that they had no interest in the subject matter of the meeting.

WHEREAS, the Governing Body has determined, in the judgment of such Governing Body, that the following resolutions, as applicable, are advisable and in the best interests of the Company, its interest holders, its subsidiaries (if any), its creditors, and other stakeholders and parties in interest.

1.    RESTRUCTURING SUPPORT AGREEMENT AND BACKSTOP AGREEMENT

WHEREAS, the Governing Body has determined, in the judgment of such Governing Body, that it is in the best interest of the Company, its interest holders, its subsidiaries (if any), its creditors, and other stakeholders and parties in interest to authorize the Company to enter into the Restructuring Support Agreement and the Backstop Agreement by and among Valaris, certain of its subsidiaries and affiliates, certain consenting creditors, and the Commitment Parties, as applicable substantially in the form presented to the Governing Body on or in advance of the date hereof;

WHEREAS, each of the Restructuring Support Agreement and the Backstop Agreement provide that they can be terminated if a Governing Body determines, after consulting with counsel, that proceeding with any of the restructuring transactions contemplated by the Restructuring Support Agreement and the Backstop Agreement would be inconsistent with applicable law or such Governing Body's fiduciary duties;

NOW, THEREFORE, IT IS RESOLVED, that the Restructuring Support Agreement and the Backstop Agreement be and are hereby approved and that any partner, director, manager, or other duly appointed officer of Valaris or the Company be, and hereby are, authorized and appointed to act as signatory and attorney on behalf of the Company in respect of the Restructuring Matters (together with any persons to whom such persons delegate certain responsibilities, collectively, the "**Authorized Persons**") and are hereby authorized and directed to take all actions necessary or advisable to negotiate and finalize the Restructuring Support Agreement and the Backstop Agreement and, subject to receiving sufficient consents from the consenting creditors, and the Commitment Parties, as applicable, and provided that the board of directors of Valaris approves entry into the Restructuring Support Agreement or Backstop Agreement by August 21, 2020, enter into and perform under the Restructuring Support Agreement or Backstop Agreement, as applicable and the restructuring transactions contemplated thereunder; and

RESOLVED, that each of the Authorized Persons are hereby authorized and appointed to act as signatory and attorney on behalf of the Company in respect of the Restructuring Support Agreement and Backstop Agreement and each of the Authorized Persons, acting alone or with one or more other Authorized Persons be, and hereby are, authorized and empowered to enter on behalf of the Company into the Restructuring Support Agreement and Backstop Agreement with such changes and in such form as the Authorized Person or Authorized Persons executing the same shall in his or their absolute discretion deem appropriate.

2.    VOLUNTARY PETITION FOR RELIEF UNDER APPLICABLE BANKRUPTCY LAW AND SEEKING NECESSARY RELIEF

NOW, THEREFORE, IT IS RESOLVED, that, in the judgment of the Governing Body, it is desirable and in the best interest of the Company, its interest holders, its subsidiaries (if any), its creditors, and other stakeholders and parties in interest, that the Company file or cause to be filed voluntary petitions for relief (the "**Bankruptcy Petitions**") under the provisions of chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (as amended, the "**Bankruptcy Code**") in a court of proper jurisdiction (the "**Bankruptcy Court**") for the Company and any of its subsidiaries, any applicable foreign ancillary

proceedings for the Company; and, in accordance with the requirements in the Company's governing documents and applicable law, hereby consents to, authorizes and approves, the filing of the Bankruptcy Petitions and the foreign ancillary proceedings, if any; and further resolved that such consent, authorization, and approval is subject to the substantially simultaneous or prior filing of the Bankruptcy Petitions in the Bankruptcy Court of Valaris plc (the "**Parent Filing**"); *provided* that (i) the Parent Filing occurs no later than August 21, 2020 and (ii) the facts and circumstances with respect to the Company have not materially changed since the date first written above.

**RESOLVED**, that ach of the Authorized Persons, be, and hereby are, authorized to execute (under the common seal of the Company, if appropriate) and file on behalf of the Company and its subsidiaries all petitions, schedules, lists, and other motions, papers, or documents, and to take any and all action that they deem necessary or proper to obtain such relief, including, but not limited to, any action necessary or proper to maintain the ordinary course operations of the Company's or any of its subsidiary's businesses.

## 3.     RETENTION OF PROFESSIONALS

**RESOLVED**, that each of the Authorized Persons, be, and hereby are, authorized, empowered and directed to employ:  (i) the law firm of Kirkland & Ellis LLP as general bankruptcy counsel, (ii) the law firm of Jackson Walker LLP as co-bankruptcy counsel**,** (iii) the law firm of Slaughter and May as English counsel, (iv) Lazard Frères & Co. LLC as financial advisor, (v) Alvarez and Marsal North America, LLC as restructuring advisor, (vi) Stretto as notice and claims agent, and (vii) any other legal counsel, accountants, financial advisors, restructuring advisors or other professionals the Authorized Persons deem necessary, appropriate or advisable; each to represent and assist the Company in carrying out its duties and responsibilities and exercising its rights under the Bankruptcy Code and any applicable law (including, but not limited to, the law firms filing any pleadings or responses); and in connection therewith, the Authorized Persons, be, and hereby are authorized, empowered and directed, in accordance with the terms and conditions hereof, to execute (under the common seal of the Company, if appropriate) appropriate retention agreements, pay appropriate retainers, and to cause to be filed appropriate applications for authority to retain such services;

**RESOLVED**, that each of the Authorized Persons, be, and hereby are, authorized, empowered and directed to execute (under the common seal of the Company, if appropriate) and file all petitions, schedules, motions, lists, applications, pleadings, and other papers, and to perform such further actions and execute (under the common seal of the Company, if appropriate) such further documentation that the Authorized Persons in their absolute discretion deem necessary, appropriate or desirable in accordance with these resolutions.

## 4.     DIP FINANCING AND ADEQUATE PROTECTION

**WHEREAS**, reference is made to that certain DIP Term Sheet, dated on or around the date hereof (as amended, restated, amended and restated, supplemented, extended or otherwise modified from time to time, the "**DIP Term Sheet**") relating to a debtor-in-possession credit agreement referred to therein (together with all exhibits, schedules, and annexes thereto, as amended, amended and restated, supplemented or otherwise modified from time to time, the "**DIP Credit Agreement**") to be entered into by and among, *inter alios*, Valaris plc, an English public limited company (the "**Borrower**"), the lenders party thereto from time to time (the "**DIP Lenders**"), and the administrative agent and collateral agent for the lenders (in such capacities, the "**Agent**");

**WHEREAS**, the obligation of the DIP Lenders to make certain extensions of credit is subject to the Borrower and each Guarantor (collectively, the "**DIP Credit Parties**") having satisfied certain conditions described in the DIP Term Sheet, including that each of the Loan Documents and other documentation relating to the DIP Facility shall have been executed and delivered and be in form and substance consistent with the DIP Term Sheet and the Commitment Letter to which it is attached (collectively, the "**Commitment Letter**") and otherwise reasonably satisfactory to the Borrower and its counsel and the Agent and its counsel;

**WHEREAS**, Management and the Advisors have negotiated the terms of the Commitment Letter regarding the DIP Credit Agreement, the key terms of which have been discussed with the Governing Body;

**WHEREAS**, as a condition to providing loans and other extensions of credit by the Lenders under the DIP Credit Agreement to the Company, the DIP Lenders have required the Company to secure the Obligations by granting to the Administrative Agent for the benefit of the Secured Parties a first priority security interest in and lien upon all or substantially all of its personal property subject to certain exceptions as more fully described in the DIP Term Sheet, and the Company considers that the granting of such security is desirable and in the best interests of the Company, its interest holders, its subsidiaries (if any), its creditors, and other stakeholders and parties in interest (particularly in light of the fact that it will permit the Borrower to obtain and utilize the DIP Financing for the benefit of the Valaris group as a whole);

**WHEREAS**, the Company, as applicable, proposes to enter into (i) a Security Agreement (together with all exhibits, schedules, and annexes thereto, as amended, amended and restated, supplemented or otherwise modified from time to time, the "**Security Agreement**") to be entered into by and among the Valaris, certain of its subsidiaries (including the Company), the DIP Lenders and the Agent, and (ii) a Guaranty Agreement (together with all exhibits, schedules, and annexes thereto, as amended, amended and restated, supplemented or otherwise modified from time to time, the "**Guaranty**") to be entered into by and among the Borrower, each entity identified as a "Guarantor" therein, the DIP Lenders and the Agent;

**WHEREAS**, it is desirable and in the best interests of the Company to obtain the benefits from the incurrence of the DIP Obligations pursuant to the DIP Credit Agreement and other DIP Documents or arising from the DIP Order, which are necessary and convenient to the conduct, promotion and attainment of the business of the Company (the "**DIP Financing**"); and

**NOW, THEREFORE, IT IS RESOLVED**, that, to the extent applicable to the Company, in the judgment of the Governing Body, it is desirable and in the best interest of (i) the Company, its interest holders, its creditors, and other stakeholders and parties in interest, to enter into the transactions contemplated by the Commitment Letter and the DIP Term Sheet, and (ii) such DIP Credit Party to (a) execute and deliver the Commitment Letter and the DIP Term Sheet and any other document or agreement to which it is contemplated to become a party pursuant to the Commitment Letter, the DIP Credit Agreement and the other DIP Documents (as defined below) and (b) authorize the Authorized Persons to take any and all actions as any such Authorized Person may deem appropriate to effect the transactions contemplated by the Commitment Letter, the DIP Credit Agreement and the DIP Documents.

**RESOLVED**, that, to the extent applicable to the Company, the Authorized Persons be, and hereby are, authorized, directed and empowered in the name of, and on behalf of, the Company to seek approval

of the transactions contemplated by the Commitment Letter, Security Agreement, Guaranty, and the DIP Credit Agreement pursuant to a debtor-in-possession financing order in final form (a "**DIP Order**," and together with the Loan Documents, the DIP Term Sheet, the DIP Credit Agreement, and the Commitment Letter, the "**DIP Documents**"), and, to the extent applicable to the Company, any Authorized Person be, and hereby is, authorized, empowered, and directed to negotiate, execute (under the common seal of the Company, if appropriate), and deliver any and all agreements, instruments, or documents, by or on behalf of the Company, necessary or advisable to implement the DIP Order, including providing for adequate protection to the DIP Lenders in accordance with section 363 of the Bankruptcy Code to secure the obligations of the DIP Parties under the DIP Credit Agreement (collectively, the "**DIP Obligations**") as documented in the DIP Order, as well as any additional or further agreements for the extension of credit under the DIP Credit Agreement in connection with the Company's chapter 11 cases, which agreement(s) may require the Company to grant adequate protection and security interests to the DIP Lenders and each other agreement, instrument, or document to be executed and delivered in connection therewith, by or on behalf of the Company pursuant thereto or in connection therewith, all with such changes therein and additions thereto as any Authorized Person in his absolute discretion approves, such approval to be conclusively evidenced by the taking of such action or by the execution and delivery thereof;

RESOLVED, that each of the Authorized Persons be, and hereby are, authorized, directed, and empowered in the name of, and on behalf of, the Company to execute (under the common seal of the Company, if appropriate) and deliver any amendments, supplements, modifications, renewals, replacements, consolidations, substitutions, and extensions of the DIP Order or to do such other things which shall in his/her absolute discretion be necessary, desirable, proper, or advisable to give effect to the foregoing resolutions, which determination shall be conclusively evidenced by his or their execution thereof;

RESOLVED, that the form, terms and provisions of the DIP Term Sheet, the Commitment Letter, the DIP Order, the DIP Credit Agreement, and the form, terms and provisions of each of the DIP Documents to which the Company is or will be a party (or to which it shall otherwise be subject), be, and hereby are, in all respects approved; and further resolved, that each of the Authorized Persons, acting alone or with one or more other Authorized Persons be, and hereby is, authorized and empowered to negotiate, approve the terms of, execute, and deliver (including by facsimile, electronic, or comparable method) the DIP Credit Agreement, each of the other DIP Documents to which it will be a party, and each of the instruments and documents contemplated thereby, in the name and on behalf of the Company, on behalf of itself or its subsidiaries, as applicable, under the Company's corporate seal or otherwise, with such changes therein as shall be approved by the Authorized Person executing the same, with such execution by said Authorized Person to constitute conclusive evidence of his or her approval of the terms thereof, including any departures therein from the form presented to the Governing Body;

RESOLVED, that the granting of security interests by the Company in all property now or hereafter owned by the Company as contemplated by the Security Agreement, the Guaranty, the DIP Credit Agreement, the DIP Order, the other DIP Documents and any other agreements, documents or filings that the Agent or any Prepetition Secured Lender determines are necessary, appropriate, or desirable pursuant to the terms of the DIP Documents be, and hereby are, in all respects, authorized and approved; and further resolved, that the Agent or any Prepetition Secured Lender is authorized to file or record financing statements and other filing or recording documents or instruments with respect to the Collateral (as defined in the DIP Term Sheet) or the Cash Collateral (as defined in the Cash Collateral Order) without the signature of the Company in such form and in such offices as the Agent or any Prepetition Secured Lender determines appropriate; the Agent and each Prepetition Secured Lender is authorized to use the collateral

description "all personal property of debtor" or "all assets of debtor" or any similar description in any such financing statements;

**RESOLVED**, that each of the Authorized Persons is authorized and empowered in the name of, and on behalf of, the Company to file or to authorize the Agent or any Prepetition Secured Lender to file any Uniform Commercial Code (the "**UCC**") financing statements, any other equivalent filings, any intellectual property filings and recordation and any necessary assignments for security or other documents in the name of the Company that the Agent or any Prepetition Secured Lender deems necessary or appropriate to perfect any lien or security interest granted under the DIP Order, or the Cash Collateral Order including any such UCC financing statement containing a generic description of collateral, such as "all assets," "all property now or hereafter acquired" and other similar descriptions of like import, and to execute and deliver, and to record or authorize the recording of, such mortgages and deeds of trust in respect of real property of the Company and such other filings in respect of intellectual and other property of the Company, in each case as the Agent or any Prepetition Secured Lender may reasonably request to perfect the security interests of the Agent or any Prepetition Secured Lender under the DIP Order or the Cash Collateral Order, as applicable;

**RESOLVED**, that the Authorized Persons, acting alone or with one or more other Authorized Persons, be, and each of them hereby is, authorized, directed, and empowered in the name and on behalf of the Company, as a debtor and a debtor in possession, to guarantee the DIP Obligations and Adequate Protection Obligations under the DIP Credit Agreement, the DIP Order, the Cash Collateral Order and the other DIP Documents (as applicable) on behalf of itself or on behalf of its subsidiaries, as applicable, to assign, transfer, pledge, and grant, or to continue to assign, transfer, pledge, and grant, to the Agent, for the ratable benefit of the respective or applicable Prepetition Secured Lenders, a security interest in all or substantially all the assets of the Company, as collateral security for the prompt and complete payment and performance when due of the DIP Obligations and Adequate Protection Obligations under the DIP Credit Agreement, the DIP Order, the Cash Collateral Order, and the other DIP Documents (as applicable) to which the Company is a party (or otherwise subject) and to take or cause to be taken any such actions as may be necessary, appropriate or desirable to cause the Company to create, perfect and maintain a security interest in its property or assets constituting Collateral and/or Adequate Protection Collateral as described or contemplated in the applicable DIP Documents;

**RESOLVED**, that each of the Authorized Persons be, and hereby is, authorized and empowered to take all such further actions including, without limitation, to pay all fees and expenses in accordance with the terms of the DIP Documents, to arrange for and enter into supplemental agreements, instruments, certificates, or documents relating to the transactions contemplated by the DIP Credit Agreement, the DIP Order, the Cash Collateral Order or any of the DIP Documents and to execute and deliver all such supplemental agreements, instruments, certificates, or documents in the name and on behalf of the Company under its corporate seal or otherwise, which shall in their sole judgment be necessary, proper, or advisable in order to perform the Company's DIP Obligations and/or Adequate Protection Obligations under or in connection with the DIP Credit Agreement, the DIP Order, the Cash Collateral Order or any of the DIP Documents (as applicable) and the transactions contemplated therein, and to carry out fully the intent of the foregoing resolutions, in such form and with such terms as shall be approved by the Authorized Person executing the same, with such execution by said Authorized Person to constitute conclusive evidence of his or her approval of the terms thereof;

**RESOLVED**, that each of the Authorized Persons be, and hereby is, authorized and empowered to execute and deliver any amendments, amendment and restatements, supplements, modifications,

renewals, replacements, consolidations, substitutions, and extensions of the DIP Credit Agreement, the DIP Order, or any of the DIP Documents that shall, in their sole judgment, be necessary, proper, or advisable, in such form and with such terms as shall be approved by the Authorized Person executing the same, with such execution by said Authorized Person to constitute conclusive evidence of his or her approval of the terms thereof;

**RESOLVED**, that for all transactions authorized above, the Authorized Persons are authorized to open an account or accounts with such third parties as they deem necessary or desirable for the purpose of engaging in such transactions, and the other party to such transactions is authorized to act upon any verbal or written orders and instructions from or contracts (including any account control agreements or similar agreements) executed by the Authorized Persons in connection with such accounts and transactions;

**RESOLVED**, that each of the Authorized Persons be, and hereby is, authorized and empowered to take all actions or to not take any action in the name of the Company with respect to the transactions contemplated by these resolutions as the sole shareholder, partner, general partner, sole member, member, managing member, sole manager, manager, or director of each applicable subsidiary of the Company, if any, whether existing now or in the future, in each case, as such Authorized Person shall deem necessary or desirable, including, without limitation, the authorization of resolutions and agreements necessary to authorize the execution, delivery, and performance pursuant to the DIP Documents (including, without limitation, certificates, affidavits, financing statements, notices, reaffirmations, and amendments and restatements thereof or relating thereto) as may be necessary, appropriate, or convenient to effectuate the purposes of the transactions contemplated herein; the performance of any such further act or thing and the execution of any such document or instrument by any of the Authorized Persons pursuant to these resolutions shall be conclusive evidence that the same have been authorized and approved by the Company in every respect;

**RESOLVED**, that all acts and actions taken by the Authorized Persons prior to the date hereof with respect to the transactions contemplated by the DIP Credit Agreement, the DIP Order, or any of the DIP Documents be, and hereby are, in all respects confirmed, approved, and ratified;

**RESOLVED**, that the signature of any Authorized Person shall be conclusive evidence of the authority of such Authorized Person to execute and deliver the documents to which the Company is a party; the authority granted herein shall apply with equal force and effect to any successors-in-office of the Authorized Person herein identified; and

**RESOLVED**, that all capitalized terms used in the resolutions in this section entitled "**DIP Financing and Adequate Protection**" and not otherwise defined herein shall have the meanings ascribed to such terms in this written consent, the Commitment Letter, the DIP Term Sheet, the DIP Credit Agreement, or the DIP Order, as applicable.

**5.      FURTHER ACTIONS AND PRIOR ACTIONS**

**RESOLVED**, that the Company is hereby authorized to authorize (the Company hereby authorizes) any direct or indirect subsidiary of the Company or any entity of which the Company or any subsidiary of such Company is the sole member, general partner, managing member, or equivalent manager, as applicable, to take each of the actions described in these resolutions or any of the actions authorized in these resolutions, and none of the resolutions contained herein, or action taken in furtherance hereto,

shall have or cause an adverse effect on any such subsidiary or the Company's interest therein (including without limitation, any automatic dissolution, divestiture, dissociation, or like event under applicable law);

**RESOLVED**, that, in addition to the specific authorizations heretofore conferred upon the Authorized Persons, the Authorized Persons, either individually or as otherwise required by the Company's governing documents and applicable law, be, and each of them hereby is, authorized to execute (under hand or under the common seal of the Company if appropriate), acknowledge, deliver, and file any and all agreements, certificates, instruments, powers of attorney, letters, forms, transfer, deeds and other documents on behalf of the Company relating to the Restructuring Matters;

**RESOLVED**, that each of the Authorized Persons (and their designees and delegates) be, and hereby is, authorized and empowered, in the name of and on behalf of the Company, to take or cause to be taken any all such other and further action, and to execute (under the common seal of the Company, if appropriate), acknowledge, deliver, and file any and all such agreements, certificates, instruments, and other documents and to pay all expenses, including but not limited to filing fees, in each case as in such Authorized Person's or Authorized Persons' absolute discretion, shall be necessary, appropriate, or desirable in order to fully carry out the intent and accomplish the purposes of the resolution adopted herein;

**RESOLVED**, that the Governing Body has received sufficient notice of the actions and transactions relating to the matters contemplated by the foregoing resolutions, as may be required by the governing documents of the Company, or hereby waives any right to have received such notice;

**RESOLVED**, that all acts, actions, and transactions relating to the matters contemplated by the foregoing Resolutions done in the name of and on behalf of the Company, which acts would have been approved by the foregoing Resolutions except that such acts were taken before the adoption of these Resolutions, are hereby in all respects approved, confirmed and ratified as the true acts and deeds of the Company with the same force and effect as if each such act, transaction, agreement, or certificate had been specifically authorized in advance by resolution of the Governing Body; and

**RESOLVED**, that any Authorized Person be, and each of them hereby is, authorized to do all such other acts, deeds and other things as the Company itself may lawfully do, in accordance with its governing documents and applicable law, howsoever arising in connection with the matters above, or in furtherance of the intentions expressed in the foregoing resolutions, including, but not limited to, the negotiation, finalization, execution (under hand or common seal, whether or not expressed to be a deed, as may be necessary or appropriate) and delivery of any other agreements, certificates, instruments, powers of attorney, letters, forms, transfer, deeds and other documents whatsoever as the individual acting may in his/her absolute and unfettered discretion approve, deem or determine necessary, appropriate or advisable, such approval, deeming or determination to be conclusively evidenced by said individual taking such action or the execution thereof.

[Signature pages follow]

In WITNESS WHEREOF, the undersigned have executed this written consent as of the date first above written.

_Nicolas Jaciuk_

Nicolas Jaciuk

In WITNESS WHEREOF, the undersigned have executed this written consent as of the date first above written.

_____
Derek A. Sangster

DocuSign Envelope ID: A7DE17CB-061C-48C9-9006-6F10605BAE06

In WITNESS WHEREOF, the undersigned have executed this written consent as of the date first above written.

_Ravi Amsadi_

_____

Ravishanker Amsadi